IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**DARREN WEBSTER**,

        Plaintiff,

    v.

**SHERIFF LARRY BLANTON,
DESCHUTES COUNTY Jail, et al.**,

        Defendants.

No. 6:14-cv-00634-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Deschutes County Defendants filed a Motion for Summary Judgment [127] arguing each of Plaintiff Darren Webster's three claims should be dismissed. Deschutes County Defendants argue Mr. Webster has either failed to exhaust his administrative remedies; failed to show that there is a genuine issue of material fact; or cannot show that Deschutes County Defendants are not entitled to the protection of qualified immunity. For the reasons set forth below, Mr. Webster's three claims are dismissed with prejudice.

## BACKGROUND

    Mr. Webster has made three claims for relief. In Claim I, Mr. Webster alleges that: (1) the diet he was provided while he was in the Deschutes County Adult Jail (the "Jail") was not customary or reasonable for a person suffering diabetes; (2) the diet he was provided while he was in the Jail caused him injury; (3) Deschutes County Defendants were deliberately indifferent

1 – OPINION AND ORDER

to his health; and (4) he suffered a pancreatitis attack while at the Jail. In Claim II, Mr. Webster alleges that: (1) Jail medical staff ignored instructions from a physician with regard to his medical treatment; and (2) Deschutes County Defendants punished him for his failure to follow the medical advice of Jail staff. Finally, in Claim III, Mr. Webster alleges that: (1) he received or consumed food contaminated with the norovirus or some other food-borne disease; (2) the source of the Jail's norovirus outbreak was determined to be human excrement introduced into the food chain; and (3) he contracted the norovirus or some other food-borne disease while an inmate at the Jail. Mr. Webster seeks a damages award on each of these claims.

## FACTUAL HISTORY

On January 13, 2014, Mr. Webster was booked into the Jail. *See* Decl. of Lt. Michael Gill in Support of Deschutes County Defendants' Motion for Summary Judgment ("Gill Declaration"), at ¶2. At the time of his booking, Mr. Webster completed an "Intake Medical Screening Form." Gill Declaration at ¶3 and Exhibit 2 thereto. According to the information provided by Mr. Webster, at the time of his booking he (1) was intoxicated; (2) suffered from diabetes and was insulin dependent, but had not taken any insulin for 1 and ½ weeks; (3) suffered from pancreatitis, throat cancer and a double hernia; and (4) had not been prescribed any special diet by a physician. Gill Declaration at ¶4 and Exhibit 2 thereto.

A few months later, Jail medical staff noted an elevation in Mr. Webster's blood sugar levels. *See* Decl. of D. Lane in Support of Deschutes County Defendants' Motion for Summary Judgment ("Lane Declaration") at ¶2. For the next several days, Jail medical staff attempted to lower Mr. Webster's blood sugar levels by adjusting his insulin. Lane Declaration at ¶2. Three days later, Mr. Webster's blood sugar levels were significantly improved. *Id.* However, Mr. Webster then began to complain of severe abdominal pain. Lane Declaration at ¶2. Based on

his complaints, Jail staff transported Mr. Webster to St. Charles Medical Center, where he was examined by Dr. David Rosenberg. Lane Declaration at ¶2.

Mr. Webster told Dr. Rosenberg that he was suffering from a pancreatitis attack. Lane Declaration at ¶2. However, after examining Mr. Webster, Dr. Rosenberg determined that while it was possible Mr. Webster had chronic pancreatitis, his symptoms were also consistent with other conditions "including GERD, gastritis." Lane Declaration at ¶3 and Exhibit "A" thereto. Dr. Rosenberg concluded that "[r]egardless, there is no indication for acute admission to the hospital in the absence of more concerning findings." Lane Declaration at ¶3 and Exhibit "A" thereto. Dr. Rosenberg then discharged Mr. Webster back to the Jail, with the following instructions to Jail medical staff: "Recommend observation, return as needed for change of status." Lane Declaration at ¶4 and Exhibit "B" thereto.

Shortly after returning to the Jail from the hospital, Mr. Webster informed Jail medical staff that he would not deal with "[their] department any longer." Lane Declaration at ¶5. From that time, until his discharge on May 8, 2014, Mr. Webster refused to submit to blood sugar checks, eat meals, submit to health assessments, or take insulin as recommended by Jail staff. Lane Declaration at ¶5.

At all times relevant to this action, the Jail's meal service was provided by an independent contractor, Aramark Corrections Services, LLC ("Aramark"), through a contract with Deschutes County. Pursuant to the terms of the contract, Aramark was responsible for all food procurement, preparation and service at the Jail. Gill Declaration at ¶ 11. As part of its contract, Aramark was responsible for creating menus for inmate meals, and for ensuring that all menus were reviewed and approved by a registered dietician. According to Katherine Crowley, a registered dietician employed by Aramark, the diabetic menus and meals served to Mr. Webster

3 – OPINION AND ORDER

met caloric and nutritional requirements for inmates, were consistent with American Diabetes Association standards in effect at the time, and were prepared and served under conditions that did not present a danger to the health or well-being of inmates who consumed them. Crowley Declaration at ¶8.

Immediately upon Mr. Webster's admission to the Jail, medical staff directed Aramark to provide Mr. Webster with a diabetic diet, and meals served to Mr. Webster during his incarceration were Aramark-prepared diabetic meals. Gill Declaration at ¶13. On several occasions, Mr. Webster requested that he be allowed to eat regular (i.e., non-diabetic) meals, but these requests were denied due to his medical condition. Gill Declaration at ¶13.

At the time of Mr. Webster's incarceration, the Deschutes County Jail had an inmate grievance system in place. *See* Gill Declaration at ¶14. Inmate complaints about conditions of confinement or staff misconduct are subject to the grievance process. Gill Declaration at ¶14 and Exhibit "3" thereto. The grievance process has five steps. Gill Declaration at ¶14 and Exhibit "3" thereto. The first step in the process is for an inmate to identify an issue and attempt to resolve the issue with staff. Gill Declaration at ¶14 and Exhibit "3" thereto. Both staff and the inmate have an obligation to work in good faith. Gill Declaration at ¶14 and Exhibit "3" thereto.

If, after attempting to resolve the grievance at this level, an inmate is unable to do so the next step is to submit a written grievance. Gill Declaration at ¶14 and Exhibit "3" thereto. Written grievances are generally reviewed by a sergeant who prepares a written response to the grievance and delivers it to the inmate. Gill Declaration at ¶14 and Exhibit "3" thereto. If the inmate is dissatisfied, he or she may appeal. There are three levels of appeal. Gill Declaration at ¶14 and Exhibit "3" thereto. The first appeal is to a lieutenant, the second is to the captain, and the final appeal is to the sheriff. The process is complete upon review by the sheriff. Gill

4 – OPINION AND ORDER

Declaration at ¶14 and Exhibit "3" thereto. The grievance process is summarized to all inmates in the *Inmate Manual,* which is provided to inmates housed at the Jail. Gill Declaration, at ¶15 and Exhibit "4" thereto.

While incarcerated at the Jail, Mr. Webster submitted one grievance: a March 10, 2014 grievance in which he complained that the diabetic diet at the Jail was not reflective of what a certified dietician would accept as reasonable. Gill Declaration at ¶16 and Exhibit "5" thereto. This grievance was denied, and Mr. Webster appealed that denial through all three levels of appeal. Gill Declaration at ¶ 16 and Exhibits "6", "7", and "8" thereto. It is undisputed that Mr. Webster exhausted his administrative remedies with respect to his diabetic diet complaints. Mr. Webster did not submit a grievance regarding any other aspect of his incarceration at the Jail—including his medical treatment, his housing, any allegedly punitive treatment, or his alleged exposure to norovirus. Gill Declaration at ¶17.

## ANALYSIS

### I.    Failure to Exhaust Administrative Remedies

Deschutes County Defendants' Motion for Summary Judgment [127] is granted with respect to Claims II and III. The uncontroverted facts establish that Mr. Webster failed to exhaust his administrative remedies with respect to these two claims. Not only did Mr. Webster fail to follow through with the three level appeal process, he failed to ever make an initial grievance.

Mr. Webster's only counterargument in his response is the conclusory statement, "the [grievance] process was denied me in effect by as seen on p.5 of 5." Pl.'s Resp. [183] at 1. The "p.5 of 5" reference appears to be to the March 10 grievance he filed regarding the diabetic menu he was receiving. Pl.'s Resp. [183-1] at 5. On that page, in the portion flagged for the inmate's signature, Lt. Scott Lutz wrote "refused to sign." The form also indicates that Sheriff Blanton did

not respond to Mr. Webster's level three appeal until after the fourteen day response deadline required by Jail policy. However, Mr. Webster makes no attempt to explain how the absence of his signature on the appeal form, or Sheriff Blanton's delay in responding to his appeal, is evidence that he was denied access to the Jail's grievance process for purposes of the allegations set forth in Claims II and III.

Because Mr. Webster failed to exhaust his administrative remedies with regards to Claims II and III, and because he had failed to provide any legally significant excuse for not doing so, those two claims are dismissed with prejudice.

## II.     Qualified Immunity

With regards to Claim I, I find that Deschutes County Defendants are entitled to the protections of qualified immunity. Under the doctrine of qualified immunity, even if a constitutional violation occurred, governmental officials are immune if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To determine whether a defendant is entitled to qualified immunity, courts must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If not, the qualified immunity analysis ends. *Id.* at 201. On the other hand, "if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.* In other words, would a reasonable official know that the conduct complained of violated plaintiff's constitutional rights? It is no longer mandatory for courts to evaluate the two questions in sequence. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). Courts have

discretion "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id.*

Assuming *arguendo* that Mr. Webster has a constitutional right to diabetic friendly meals, Mr. Webster cannot show that a reasonable official standing in the place of the Deschutes County Defendants would have known that the conduct complaint of in Claim I violates Mr. Webster's constitutional right. In Claim I, Mr. Webster alleges that: (1) the diet he was provided while he was in the Jail was not customary or reasonable for a person suffering diabetes; (2) the diet he was provided while he was in the Jail caused him injury; (3) Deschutes County Defendants were deliberately indifferent to his health; and (4) he suffered a pancreatitis attack while at the Jail. Because the Deschutes County Defendants had received confirmation from Katherine Crowley, a registered dietician, that the diabetic menus and meals served to Mr. Webster were consistent with accepted diabetic standards in effect at the time, and were prepared and served under conditions that did not present a danger to the health or well-being of inmates who consumed them, a reasonable official in their shoes could not have known that they were violating any inmates' rights to diabetic appropriate foods. A reasonable official would have thought (1) that the food being served was diabetic appropriate and (2) that is would not harm a single diabetic inmate because that is what a registered dietician told them. Consulting a registered dietician is the opposite of deliberate indifference. There is no evidence that any official, reasonable or not, would have thought the food served to Mr. Webster could have cause a pancreatitis attack and there is no evidence that the food served to him did cause such an attach. The Deschutes County Defendants are entitled to the protections of qualified immunity. Therefore, Mr. Webster's Claim I must be dismissed with prejudice.

//

### III.     Aramark Correctional Services LLC

Aramark is only implicated in Claim I. Although not an official party to this motion, I also dismiss Claim I with respect to Aramark with prejudice. Each of Mr. Webster's claims are brought under the Eighth Amendment. As a private party, Aramark cannot violate the Eighth Amendment as it has no power to punish anyone for anything in the way the word "punish" is used in the Eighth Amendment. To the extent Aramark should be considered a state actor due to its contract with the Deschutes County Defendants, thus capable of violating the Eighth Amendment, my qualified immunity analysis above would apply, thus absolving Aramark of any liability. I therefore dismiss Claim I with respect to Aramark with prejudice.

## CONCLUSION

For the foregoing reasons, Deschutes County Defendants' Motion for Summary Judgment [127] is GRANTED. Mr. Webster's claims against these Defendants are dismissed with prejudice.

IT IS SO ORDERED.

DATED this __17th__ day of August, 2015.

/s/ Michael W. Mosman  
MICHAEL W. MOSMAN  
United States District Judge
